UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRIAN HEYMANN and
STEVE SCHWARZ,
Individually and on behalf of
Others similarly situated,

    Plaintiffs.

vs.

LENNAR HOMES, LLC,
LEN-CG SOUTH, LLC,
LEN OT HOLDINGS, LLC, and
LENNAR CORPORATION,

    Defendants.

CLASS REPRESENTATION

CASE NO.: 6:25-cv-00466-PGB-UAM

## **PLAINTIFFS' MOTION FOR REMAND**

Plaintiffs, Brian Heymann and Steve Schwarz, individually and on behalf of others similarly situated, move under 28 U.S.C. § 1332(d)(3) for an order remanding this action to the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida. As set forth in this motion, more than one-third of the putative class members are Florida citizens, each Defendant is a Florida citizen, and each of the statutory factors guiding the Court's exercise of discretion points to remand in this case.

### BACKGROUND

The two named Plaintiffs, who are individual homeowners in the ChampionsGate residential community located in Osceola County, filed this lawsuit

1

in Florida state court on behalf of a putative class of 5,286 current and former ChampionsGate homeowners. Plaintiffs challenge Defendants' collection of an illegal club membership fee from the homeowners at ChampionsGate, asserting claims under Florida law, including the Florida Homeowners' Association Act and the Florida Deceptive and Unfair Trade Practices Act for damages and declaratory, injunctive, and equitable relief.

Two years ago, Florida's Sixth District Court of Appeal invalidated a nearly identical club membership fee charged to homeowners in Solivita, a residential community in Polk County. *Avatar Props., Inc. v. Gundel*, 372 So. 3d 715 (Fla. 6th DCA 2023). The club plan in *Gundel*—like the club plan here—required each purchaser "to become a permanent member of the [Solivita] Club" and "pay Club membership dues" consisting of two components: "Club expenses," which were "shared proportionally by each resident," and a Club "membership fee, which represented an annual profit charged to each landowner and payable to Avatar." *Id.* at 717–18. The Club membership "fee was payable regardless of whether the facilities were removed and all services discontinued, all of which could be done at Avatar's sole discretion, with no input from any resident or the Association." *Id.* at 718–19.

Like Plaintiffs in this case, Gundel challenged the club membership fee—"the assessments for Avatar's Club profit"—as illegal under Florida Statute § 720.308. *Id.* at 719. The Sixth District held, "Section 720.308 mandates that assessments are limited to the member's proportionate share of the 'expenses,' and Avatar's fees

representing profits, by definition, are not expenses." *Id.* The court thus affirmed summary judgment for a certified class of homeowners, holding, "section 720.308(3) prohibits the homeowners of Solivita from being assessed a membership fee (the profit component of the Club's operation.)" *Id.* at 722. The Florida Supreme Court denied review. *Avatar Props., Inc. v. Gundel*, SC2023-0946, 2023 WL 7220822 (Fla. Nov. 2, 2023).

In response to *Gundel*, Defendants have actively lobbied the Florida legislature to overturn the decision.[1] Despite Lennar's lobbying efforts, the Florida Legislature did not pass the proposed legislation during the 2024 and 2025 legislative sessions.

While continuing their efforts to change Florida law, Defendants removed this putative class action to federal court, asserting jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), as codified in 28 U.S.C. §§ 1332(d) and 1453. Doc. 1. The Notice of Removal confirms that each Defendant entity is a citizen of Florida. Doc. 1 at 7–8 ¶¶ 15–18. It also attaches a declaration outlining the investigation

---

[1] *See, e.g.*, Jason Garcia, *A homebuilding giant is lobbying for the power to collect endless profits from homeowners*, SEEKING RENTS, Apr. 26, 2025, https://jasongarcia.substack.com/p/a-homebuilding-giant-is-lobbying (describing in detail Lennar's lobbying efforts); Jeffrey Schweers, *Home developers ask Florida Legislature to allow "club fees,"* ORLANDO SENTINEL, Apr. 29, 2025, https://www.orlandosentinel.com/2025/04/29/central-florida-homeowners-beat-their-developers-club-fees-in-court-now-the-legislature-may-undo-it/; Jeb Bush, MIAMI HERALD, Apr. 29, 2025, *Floridians deserve transparency in lifestyle community fees. This bill delivers it | Opinion*, https://www.miamiherald.com/opinion/op-ed/article305236926.html (advocating for HB 579 and disclosing that "Bush is also a consultant for Lennar, which is a member of a coalition supporting HB 579"); 2025 Florida Senate Bill No. 1118, Florida One Hundred Twenty-Seventh Regular Session, https://www.westlaw.com/Document/I96D87F51FA1611EFB71E82B9BAECDB22/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0; 2025 Florida House Bill No. 579, Florida One Hundred Twenty-Seventh Regular Session, https://www.westlaw.com/Document/I29581E81208711F082DEB6DFEECB46CD/View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0.

Defendants' counsel undertook, and various records they reviewed, to support removal. Doc. 1 at 16–20 (Declaration of Martina Bryan). According to the declaration, the investigation identified "numerous individuals who hold legal title [to] property located in ChampionsGate subject to the Oasis Club Plan, but [for whom] evidence indicates they permanently reside outside the State of Florida," including ten individuals listed in the declaration. Doc. 1 at 17 ¶ 3.

After obtaining leave from this Court, Plaintiffs served expedited jurisdictional discovery to assess the putative class members' citizenship. Docs. 21, 31. Plaintiffs requested all documents Defendants considered in investigating the putative class for purposes of removal, including but not limited to the documents referenced in the declaration filed with Defendants' Notice of Removal. In response, Defendants agreed to produce a master class membership list (the "Lennar Class List")[2] and the "skip trace reports" for the ten individuals listed in the declaration. Otherwise, Defendants asserted wholesale objections based on work product privilege. Copies of Defendants' written responses are attached hereto as **Composite Exhibit A**.[3] When asked to admit

---

[2] A copy of the Lennar Class List is attached as Exhibit 1 to the Declaration of Adam Sharp, President and Chief Executive Officer of E-Hounds Inc., which is attached to this motion as **Exhibit B**.

[3] In the Lennar Class List, Defendants provided names, addresses, and Lennar account numbers for each putative class member. On July 9, 2025, Defendants stated in a court filing that they had provided Plaintiffs with "mailing addresses, telephone numbers, and other information to assist in identifying putative class members and their citizenship." Doc. 49 at 3 n.2. That same day, Plaintiffs' counsel contacted Defendants' counsel to request copies of the telephone numbers and other identifying information that Defendants purportedly provided. In response, Defendants filed a "Corrected" court filing, removing the reference to telephone numbers in footnote 2. Doc. 51. By letter dated July 11, 2025, Defendants' counsel provided Plaintiffs' counsel with an updated class list that included telephone numbers and email addresses (the "Updated Lennar Class List").

4

that more than one-third of the putative class members are Florida citizens, Defendants stated that they "are unable to admit or deny." Comp. Ex. A at Request for Admission No. 8.

Plaintiffs retained E-Hounds Inc. ("E-Hounds"), which specializes in computer forensics and data analysis, to conduct an analysis regarding the citizenship of the putative class members as of December 31, 2024, the date the complaint was filed. A copy of the Declaration of Adam Sharp, President and Chief Executive Officer of E-Hounds Inc., is attached hereto as **Exhibit B**, and a copy of his Supplemental Declaration is attached hereto as **Exhibit C**.[4]

As further discussed below, an extensive review of the Lennar Class List and Updated Lennar Class List, and records from various governmental sources (including homestead exemption property records from the Osceola County Property Appraiser, statewide voting records from the State of Florida Division of Elections, active professional license registrations from Florida's Department of Business and Professional Regulation, and records showing active Florida business affiliations from the Florida Department of State's Sunbiz website) has established that at least 3,483 (or 65.9%) of the 5,286 putative class members are Florida citizens.  Even limiting the analysis to natural persons who have a current homestead election on their property

---

[4] Once Defendants' counsel provided the Updated Lennar Class List on July 11, 2025, and Plaintiffs received the statewide voter registration records from the State of Florida Division of Elections on July 25, 2025, E-Hounds conducted the additional analysis that is summarized in the Supplemental Declaration of Adam Sharp. A copy of the Updated Lennar Class List is attached to the Supplemental Declaration of Adam Sharp as Exhibit 3.

in ChampionsGate, or who hold a current Florida voter registration, results in at least 1,841 individuals, or 34.8% of the putative class.

Based on the analysis confirming the Florida citizenship of more than one-third of the putative class, the Florida citizenship of each of the Defendants, and the statutory factors guiding this Court's discretion—all of which point definitively to Florida—Plaintiffs move for remand under 28 U.S.C. § 1332(d)(3).

## LEGAL STANDARD

Under CAFA's discretionary exception, "[a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction … over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed …." 28 U.S.C. § 1332(d)(3). "If those threshold requirements are met, CAFA instructs courts to consider … six factors," which are set out in § 1332(d)(3)(A)–(F). *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1150 (11th Cir. 2021).

A party seeking remand must satisfy the requirements of the exception by a preponderance of the evidence. *Id.* at 1155. "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it. It simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (cleaned up).

## MEMORANDUM OF LAW

This Court should, in the "interests of justice" and considering the "totality of the circumstances," decline to exercise jurisdiction under CAFA's discretionary exception and remand this action to state court. 28 U.S.C. § 1332(d)(3).

### I.   The threshold requirements for discretionary remand are satisfied.

Both threshold requirements necessary for the discretionary exception have been met. First, each of the Defendant entities is a citizen of Florida, as Defendants confirmed in their Notice of Removal. Doc. 1 at 7–8 ¶¶15–18. And second, Plaintiffs' jurisdictional discovery establishes that at least 3,483 (which is at least 65.9%) of the 5,286 putative class members are Florida citizens.

To show an exception applies in "cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Smith*, 991 F.3d at 1157. Class action lawsuits would "become totally unworkable if the citizenship of each individual class member had to be considered." *Id.* at 1160 (internal quotations omitted). Therefore, "[t]he standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness." *Id.* (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007)). Courts look to various types of evidence for intent to remain, including, for example, "location of real and personal property, business ownership, employment records, payment of taxes, voter registration," and other indicia. *Id.* at 1163 n.7, 8.

Here, Plaintiffs have retained E-Hounds to conduct an extensive investigation into class citizenship. Ex. B at ¶ 4. E-Hounds summarized the results of its investigation in spreadsheets that show the number of putative class members E-Hounds was able to validate as Florida citizens based on available data. Ex. B at ¶ 5; Ex. C ¶¶ 6, 10. As detailed in the attached declarations, E-Hounds has determined that at least 3,483 putative class members (which constitutes at least 65.9% of the 5,286 member putative class) are Florida citizens. Ex. C ¶ 10. E-Hounds has not determined that the remainder of the putative class members are not Florida citizens; rather, E-Hounds is unable to determine their Florida citizenship without further data collection and analysis. Ex. B at ¶ 5; Ex. C ¶ 10.

To conduct the analysis, E-Hounds took the Lennar Class List (and later the Updated Lennar Class List in which Defendants added telephone numbers and email addresses) and imported it into a data platform called Google BigQuery. Ex. B at ¶ 6; Ex. C ¶ 5. Of the 5,286 total putative class members, 4,125 are natural persons and 1,161 are entities. Ex. B at ¶ 8.

    **A.**    **Analysis of putative class members who are natural persons.**

Of the current homeowner putative class members who are natural persons, 1,145 have made homestead elections on their ChampionsGate property. Ex. B at ¶ 11; *see Smith*, 991 F.3d at 1157, n.7, n.8 (considering "property ownership" and "where the plaintiffs pay taxes" to determine intent to remain); Fla. Stat. § 196.031. To determine the homestead elections, E-Hounds uploaded property records obtained from the Osceola County Property Appraiser into Google BigQuery and conducted an

analysis to match the name and address of each natural person from the Lennar Class List with the property records. Ex. B at ¶ 12.

Of the remaining putative class members who are natural persons, another 696 current or former ChampionsGate homeowners maintain current voter registrations in the State of Florida. Ex. C at ¶ 12; *see Smith*, 991 F.3d at 1157, n.7, n.8 (considering where plaintiffs are registered to vote to determine intent to remain). To determine voter registration, E-Hounds initially obtained voter registration records from Osceola and its surrounding counties and later obtained statewide voter registration records from the State of Florida Division of Elections, and uploaded those records into Google BigQuery. Ex. B at ¶¶ 13–14; Ex C at ¶¶ 4–5. E-Hounds conducted an analysis to identify putative class members for whom some combination of name, email address, and/or telephone phone number matched across these sources. Ex. C at ¶ 6; Ex. B at ¶ 14.

Based on the above, a total of at least 1,841 natural persons (or at least 34.8%) out of the 5,286 member putative class are Florida citizens. Therefore, this case would qualify for discretionary remand based solely on the current homestead election and Florida voter registrations of the putative class members.

Further analysis of the available data confirms this class nearly reaches the two-thirds Florida citizenship threshold for mandatory remand under 28 U.S.C. § 1332(d)(4)(B)'s home state exception. Indeed, of the current homeowner putative class members who are natural persons but did not make a homestead election at their ChampionsGate property and are not registered to vote in Florida, another 463 have

9

active licenses registered with the Florida Department of Business and Professional Regulation ("DBPR").[5] *See Smith*, 991 F.3d at 1157, n.8 (looking to business ownership and employment records as proof of intent to remain). To determine status with the DBPR, E-Hounds searched the names of the natural persons from the Lennar Class List on the DBPR website for active professional licenses. E-Hounds counted as validated those natural persons whose name and address associated with a professional license on the DBPR website matched names and addresses on the Lennar Class List. Ex. B at ¶ 16.

Of the remaining current homeowner putative class members who are natural persons that were not validated by any of the above indicia of Florida citizenship, another 470 have an affiliation with an active Florida entity registered on the Florida Department of State's Sunbiz website.[6] *See Smith*, 991 F.3d at 1157, n.8 (looking to business ownership and employment records as proof of intent to remain). To determine status with the Florida Department of State, E-Hounds researched the names of natural persons from the Lennar Class List on the Sunbiz website for an

---

[5] In the initial Declaration of Adam Sharp, E-Hounds determined that 488 current homeowner putative class members who were not validated by current homestead election or Oceola and surrounding counties' voting records had active professional licenses registered with the DBPR. Ex B at ¶ 15. In the Supplemental Declaration of Adam Sharp, E-Hounds determined that 25 of those 488 individuals are also registered to vote based on statewide voting records. Ex. C at ¶ 14. Accordingly, based on the available data, 463 are now validated based on DBPR records.

[6] In the initial Declaration of Adam Sharp, E-Hounds determined that 576 current homeowner putative class members who were not validated by any of the previously referenced indicia of Florida citizenship had an affiliation with an active Florida entity registered on Sunbiz. Ex. B at ¶ 17. In the Supplemental Declaration of Adam Sharp, E-Hounds determined that 106 of those 576 individuals are also registered to vote based on statewide voting records. Ex. C at ¶ 15. Accordingly, based on the available data, 470 are now validated based on Sunbiz records.

affiliation with a Florida entity. Ex. B ¶ 18. E-Hounds counted as validated those natural persons whose name and address associated with a Florida entity on the Sunbiz website matched a name and address on the Lennar Class List. Ex. B ¶ 18.

Accordingly, these additional data points from DBPR and Sunbiz bring the number of natural-person putative class members who are Florida citizens to at least 2,774 (or 52.5% of the entire putative class).

### B.   Analysis of putative class members that are entities.

The putative class contains 1,161 entities. Ex. B at ¶ 20. To validate the Florida citizenship of the entities, E-Hounds used the entity names and addresses from the Lennar Class List and matched them to records on the Florida Department of State's Sunbiz website. Ex. B at ¶ 21.

Of those entity putative class members, 85 are corporations, all of which are incorporated in Florida and are, therefore, Florida citizens. Ex. B at ¶¶ 22–23; *see* 28 U.S.C. § 1332(c)(1) (providing that a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business).

The remaining 1,076 are entities other than corporations. Ex. B at ¶ 24. Of these, 625 have at least one member or partner with a Florida address. Ex. B at ¶ 25; *see Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021–22 (11th Cir. 2004) (holding that an artificial, unincorporated entity is a citizen of any state of which a member of the company is a citizen).

Based on the foregoing analysis, at least 710 entity putative class members are Florida citizens. Ex. B at ¶ 26. Furthermore, of the entities other than corporations, 849 have their principal place of business in Florida. Ex. B at ¶ 27.

***

In sum, an aggregate total of at least 3,483 putative class members are Florida citizens, which constitutes 65.9% of the 5,286 member putative class.

## II.    The statutory factors guiding the Court's discretion support remand.

With Plaintiffs having established the one-third Florida citizenship threshold, the district court has discretion to decline jurisdiction and remand this action to state court. 28 U.S.C. § 1332(d)(3). This discretionary exception to CAFA jurisdiction "is designed to address … concerns regarding truly 'local' controversies in cases where neither mandatory exception applies." *Toll v. Fla. Power & Light Co.*, 701 F. Supp. 3d 1286, 1293 (S.D. Fla. 2023).

Six statutory factors guide this determination, but "[n]o single factor is dispositive," and "not all need to favor remand for the court to decline jurisdiction." *Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1128 (10th Cir. 2017). Rather, the factors involve a "balancing test," which takes into consideration "the totality of the circumstances." *Id.* (parenthetically quoting William B. Rubenstein, Newberg on Class Actions § 6:21 (5th ed. 2017)).

In this case, all six factors in subsection (d)(3) point to remand:

> (A) "whether the claims asserted involve matters of national or interstate interest"

As shown in the Complaint, Doc. 1 at 113–51, this case involves the owners of real property located in Florida, ¶ 8; a Florida developer, ¶¶ 9–12, 16; a Florida club owner, ¶ 22; a club plan that makes multiple references to the Florida statutes and is recorded in the official records of Osceola County, Florida, ¶ 19; and club membership fees that have been enforced by lien and foreclosure proceedings filed in the Florida state courts, ¶¶ 23–24. And this case will require the interpretation and enforcement of the Florida Homeowners Association Act, ¶¶ 53–68.

In other words, the claims in the Complaint solely involve matters of interest to Florida. *See, e.g.*, *Speed*, 872 F.3d at 1129 (finding first factor "not a close one" because "[e]verything connects to Oklahoma," including that the oil and gas wells that gave rise to the claims were located in Oklahoma, all class members owned interests in the Oklahoma wells, Plaintiff and 48.46% of the class were Oklahoma citizens, defendant was an Oklahoma citizen, the business activities giving rise to the case occurred in Oklahoma, and the claims were based on Oklahoma law).

> (B) "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States"

The claims asserted in this case, including claims for violations of the Florida Homeowners Association Act and the Florida Deceptive and Unfair Trade Practices Act, are governed exclusively by Florida law. *See Speed*, 872 F.3d at 1132 (second factor weighed in favor of remand where "[t]he claims arise out of interests in property

13

in Oklahoma. There is no allegation of any act performed by JMA outside that State. The alleged misconduct consists of a failure to comply with an Oklahoma statute…").

    (C)    "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction"

This case was filed in Florida state court, and therefore, the complaint included the allegations necessary to establish the state court's jurisdiction. *See Speed*, 872 F.3d at 1134 (finding complaint's omission of allegations supporting prerequisites for federal jurisdiction under CAFA "unsurprising and adds little or nothing to the analysis of this factor"). But nothing suggests the complaint "deliberately defined the prospective class or the relief sought in order to frustrate removal under CAFA." *Id.* at 1133. To the contrary, the proposed class is a "natural" fit that encompasses exactly "the people and claims that one would expect to include in a class action." *Id.* at 1134 (quoting S. Rep. No. 109-14, at 37, as reprinted in 2005 U.S.C.C.A.N. 3, 36). This case challenges the Defendants' collection of the Club Membership Fee, and the proposed class consists of all current and former homeowners who were assessed a Club Membership Fee.

    (D)    "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants"

The Plaintiffs filed this action in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, which is the exact forum required by the exclusive venue provision in the Defendants' Oasis Club Plan:

> 24. Venue. EACH OWNER ACKNOWLEDGES REGARDLESS OF WHERE SUCH OWNER (i) EXECUTED A PURCHASE AND SALE AGREEMENT, (ii) RESIDES, (iii) OBTAINS FINANCING OR (iv)

14

> CLOSED ON A UNIT, EACH UNIT IS LOCATED IN OSCEOLA COUNTY, FLORIDA. ACCORDINGLY, AN IRREFUTABLE PRESUMPTION EXISTS THAT THE ONLY APPROPRIATE VENUE FOR THE RESOLUTION OF ANY DISPUTE LIES IN OSCEOLA COUNTY, FLORIDA. CLUB OWNER AGREES THAT THE VENUE FOR RESOLUTION OF ANY DISPUTE LIES IN OSCEOLA COUNTY, FLORIDA.

Doc. 1 at 225, § 24 (bold removed).

And Osceola County has a clear nexus to this case: it is the county where Defendants developed ChampionsGate; where Defendants recorded the Club Plan; where the real property owned by the putative class of homeowners is located; and where Defendants have filed lien and foreclosure proceedings to enforce the Club Membership Fee. *See Speed*, 872 F.3d at 1134 (nexus factor weighed in favor of remand where action related to real-property interests in Oklahoma, class members owned royalty interests in Oklahoma property, defendant was Oklahoma citizen, and alleged actions giving rise to suit took place in Oklahoma).

> (E) "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States"

The fifth factor "ensure[s] that no other State has as significant an interest in the controversy as does" Florida. *Speed*, 872 F.3d at 1136. And here, the members of the putative class who are Florida citizens (at least 65.9%) greatly outnumber those who may be citizens of any other single state. Indeed, the mailing addresses on the Lennar Class List indicate that non-Florida class members are widely dispersed across nearly every state, as well as the District of Columbia, Puerto Rico, and several foreign

15

countries. Unsurprisingly, the largest population centers have greater representation, with California, New Jersey, and New York each having more than 100 (but less than 225) class members, and Illinois, Massachusetts, Michigan, Pennsylvania, Texas, and Virginia each having more than 50 class members. Ex. B (attaching entity spreadsheet in its Exhibit 1). But no other state comes close to having "an interest in the litigation on par with the forum state." *Speed*, 872 F.3d at 1136-37 (quoting *Newberg on Class Actions* § 6:21 and rejecting argument that 5% representation in another state weighed against remand).

> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

As explained in the Senate Report on CAFA:

> "[T]he purpose of this factor is efficiency and fairness: to determine whether a matter should be subject to federal jurisdiction *so that it can be coordinated with other overlapping or parallel class actions*." [citation omitted] If other class actions involving the same subject matter had been filed elsewhere, this would strongly favor federal jurisdiction, *because the combined litigation could be handled under the federal court's multidistrict-litigation process*. [citation omitted].

*Speed*, 872 F.3d at 1137 (quoting S. Rep. No. 109-14, at 38) (italics added); *cf. Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1205–06 (11th Cir. 2007) (quoting and relying on Senate Report on CAFA); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163–64 (11th Cir. 2006) (same).

The only case filed within the 3-year period preceding this action that alleged claims challenging the ChampionsGate Club Membership Fee was a case filed by the homeowners association, captioned *Country Club at ChampionsGate Master Community*

*Association, Inc. v. Len-CG South, LLC, et al.*, No 2024-CA-001766 (Fla. 9th Cir. Ct.).[7] That case was filed *in the same state court* as this action, it was not removable to federal court, and, in any event, the homeowners association dismissed those particular claims pursuant to a stipulated order, which contemplated their prosecution in a separate, subsequent action or actions:

> Pursuant to Fla. R. Civ. P. 1.420(a)(2), the Association voluntarily dismisses with prejudice Counts 31-67 set forth in the Association's Complaint filed on June 25, 2024, *except nothing concerning this dismissal is intended to or does waive or adjudicate rights or claims that individual homeowners may or may not elect to bring in their individual capacity at a later date concerning the issues in these Counts*.

Ex. E at 2 (italics added).

There is no need for a federal forum to coordinate or combine the two actions: This is the only action still pending, and more significantly, both cases were filed in the same court—the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida—where they could have been consolidated under Fla. R. Civ. P. 1.270, if the need arose. On this record, the final factor, like all the other factors, favors remand.

## CONCLUSION

Considering the totality of the circumstances, this matter involves a purely local dispute that is best adjudicated by the state court. *See, e.g.*, *Speed*, 872 F.3d at 1129-37 (in case where "[e]verything connects to Oklahoma," district court properly exercised

---

[7] A copy of the complaint is attached as **Exhibit D**, and a copy of the stipulated order granting voluntarily dismissal of certain claims with prejudice is attached as **Exhibit E**.

discretion in ruling each factor supported remand); *Toll*, 701 F. Supp. 3d at 1293 (finding CAFA exception "capture[d]" case involving "a claim alleging violations under Florida law, brought by a class of homeowners, against a utilities company that serves a single state"); *Rivero v. Lung Institute, LLC*, No. 8:17-cv-3113-T-23MAP, 2018 WL 3526682, at *4 (M.D. Fla. July 23, 2018) (remanding action where "All claims are brought under Florida law; over 50% of the putative class members are citizens of Florida; the number of Florida citizens in the putative class is substantially larger than the number of citizens from any other state; the class members from outside Florida are dispersed very thinly across ten states, but the majority is concentrated in Florida; and all putative class members received treatment at Tampa's Lung Institute.").

Accordingly, Plaintiffs, Brian Heymann and Steve Schwarz, request entry of an order remanding this action to the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, and granting all further relief deemed proper to protect Plaintiffs' interests and rights.

### LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Rule 3.01(g), Local Rules for the Middle District of Florida, Plaintiffs' counsel has conferred with Defendants' counsel regarding this motion by telephone on July 31, 2025. Defendants oppose the relief requested in this motion.

Dated:  August 1, 2025

*/s/ Bryan D. Hull*
J. Carter Andersen, FBN 143626
Bryan D. Hull, FBN 20969
Harold Holder, FBN 118733
Lauren Yevich, FBN 106608

Abigail Tamayo, FBN 1049142
**BUSH ROSS, P.A.**
1801 North Highland Avenue
Tampa, FL 33602
813-224-9255
813-223-9620
Primary: candersen@bushross.com
Primary: bhull@bushross.com
Primary: hholder@bushross.com
Primary: lyevich@bushross.com
Primary: atamayo@bushross.com
Secondary: ksalter@bushross.com
Secondary: hhpld@bushross.com

J. Daniel Clark, FBN 0106471
**CLARK ♦ MARTINO, P.A.**
3407 West Kennedy Boulevard
Tampa, FL 33609
813-879-0700
813-879-5498 (Facsimile)
Primary:  dclark@clarkmartino.com
Secondary:  jliza@clarkmartino.com

John Marc Tamayo, FBN 030910
**CAMPBELL TROHN TAMAYO & ARANDA**
1701 South Florida Avenue
Lakeland, FL 33803
Primary: j.tamayo@cttalaw.com
Secondary: c.velez@cttalaw.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 1, 2025, all counsel of record who consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

*/s/ Bryan D. Hull*
Attorney
