## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**STEVE SCHWARZ and BRIAN HEYMANN,**

        **Plaintiffs,**

**v.**                                                    **Case No: 6:25-cv-466-PGB-NWH**

**LEN-CG SOUTH, LLC,**

        **Defendant.**

_____/

### <u>ORDER</u>

This cause comes before the Court on Plaintiffs Steve Schwarz and Brian Heymann's (collectively, "**Plaintiffs**") Renewed Amended Motion for Remand (Doc. 108 (the "**Motion**")), Defendant Len-CG South, LLC's ("**Defendant**") response in opposition (Doc. 118 (the "**Response**")), and Plaintiffs' reply (Doc. 125). Upon consideration, the Motion is due to be granted.

### I.     BACKGROUND

This case arises from the alleged unlawful collection of homeownership fees. (Doc. 66, ¶ 6). Defendant is a Florida corporation in the business of constructing planned residential communities. (*Id.* ¶¶ 1–2). Relevant to this dispute, Defendant constructed the "Oasis Club" within the ChampionsGate community, which operates as "an exclusive resort-style club for registered residents[.]" (*Id.* ¶ 2).

The Oasis Club is governed by controlling Florida Statutes and a master declaration. (*Id.* ¶ 4). While the master declaration requires the community's

homeowners to pay membership fees, these fees allegedly violate the relevant governing Florida Statutes. (*Id.* ¶ 6). Accordingly, a selection of those homeowners, the Plaintiffs in this case, bring this putative class action under Florida law to enjoin Defendant from collecting future homeownership fees and to recover fees already paid. (*Id.* ¶ 7).

On March 17, 2025, Defendant removed this case from the Ninth Judicial Circuit Court in and for Osceola County, Florida. (Doc. 1). In response, Plaintiff filed the Motion on October 29, 2025.

## II.    LEGAL STANDARD

28 U.S.C. § 1441(a) and 28 U.S.C. § 1453 authorize a defendant to remove a civil class action from state court to federal court where the controversy lies within the federal court's original jurisdiction. When a case is removed from state court, the removing party bears the burden of establishing federal subject matter jurisdiction by a preponderance of the evidence. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam). Subject matter jurisdiction must be assessed at the time of removal. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). Because removal from a state court constitutes an infringement upon state sovereignty, the removal requirements must be strictly construed and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

Federal courts "shall decline to exercise jurisdiction" when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate . . . are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(4)(B). Federal courts, "in the interests of justice and looking at the totality of the circumstances" may decline jurisdiction when "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes . . . [are] citizens of the State in which the action was originally filed based on consideration of" the following factors:

> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3)(A)–(F).

## III.   ANALYSIS

Plaintiffs argue that remand is both required and discretionary pursuant to 28 U.S.C. § 1332. Because the Court finds that discretionary remand is available,

and deems that exercising such discretion is warranted, the Court does not address whether remand is mandatory.[1]

## A.     Citizenship Analysis

The parties hotly contest the citizenship of the members of the putative class. The class includes 5,286 members, and to establish that remand is available, Plaintiffs must demonstrate that at least a third of the class, or 1,762 members, are Florida citizens. (Doc. 108, p. 13); 28 U.S.C. § 1332(d)(3). Importantly, the class includes both natural persons and various corporate entities. (*Id.*).

There are 4,125 natural persons in the class. Diversity jurisdiction exists between citizens of different states, and citizenship for natural persons is determined by examining an individual's domicile. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). A person's domicile is "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *Id.* (quotations omitted). Domicile can be determined by examining several factors, including "property or business

---

[1]   Defendant also argues that Plaintiffs have waived the right to seek remand. (Doc. 118, pp. 8–11). Essentially, Defendant argues that Plaintiffs took too long to file the Motion and "that Plaintiffs are conducting discovery in this case as though it will remain in federal court." (*Id.* at p. 9). However, the Motion necessarily requires extensive discovery and time, as an analysis of the putative class is a fact-intensive exercise. This action was removed in March of 2025, and the first motion to remand was filed on August 1, 2025. (Docs. 1, 57). Within the five-month timespan, Plaintiffs sought expedited discovery on jurisdictional issues and the Court granted leave for Plaintiffs to file their initial motion to remand in August. (Docs. 21, 52). Plaintiffs' subsequent motions to remand were dismissed for procedural technicalities. Ultimately, Plaintiffs did not unreasonably delay the disposition of the Motion. Moreover, absent leave of court, parties are required to participate in affirmative litigation and discovery pending the outcome of a motion. *Zinski v. Liberty Univ., Inc.*, 761 F. Supp. 3d 916, 919 (W.D. Va. 2025).

ownership, where the plaintiffs pay taxes and are registered to vote, and sworn statements of intent to remain." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1157 (11th Cir. 2021). However, the Court need not apply each of these factors to each individual class member, as the Eleventh Circuit has determined that "the evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness." *Id.* at 1160 (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007)).

First, 1,145 class members made Florida homestead elections for their properties. (Doc. 108-3, ¶ 11). To qualify for the homestead exemption, individuals must represent that the property is their permanent residence. FLA. STAT. § 196.031. Importantly, an individual who "knowingly and willfully gives false information for the purpose of claiming homestead exemption . . . is guilty of a misdemeanor of the first degree[.]". FLA. STAT. § 196.131. Thus, qualification for the Florida homestead exemption is reliable evidence of domicile.

However, Defendant's expert assesses that 232 of the 1,145 class members that claimed the Florida homestead exemption are *former* homeowners. (Doc. 71-2, p. 11). Defendant's expert claims that Plaintiffs' expert simply matched members of the class to an address with a homestead exemption, thus, some class members who have sold their homes may not themselves be Florida citizens. (*Id.*). Because of this uncertainty, the Court cannot reasonably conclude that those 232 individuals are Florida residents based on the Florida homestead exemption. As a

5

result, the Court finds that 913 class members can be considered holders of a Florida homestead exemption, and thus citizens of Florida.

Next, there are an additional 900 members of the class who are currently registered to vote in Florida who were not also counted in the Florida homestead analysis. (Doc. 108, p. 8). Plaintiffs' expert determined this number by examining publicly available voter registration data. (*Id.* at pp. 8–9). While Defendant argued that Plaintiffs do not "account for the possibility that former homeowners with out-of-state addresses and a Florida voter registration are no longer Florida citizens" such a concern defeats the purpose of this analysis. (Doc. 118, pp. 15–16). As the Eleventh Circuit has made clear, the standard for citizenship analysis in such large class actions is "practicality and reasonableness." *Smith*, 991 F.3d at 1160. The indicia of voter registration is sufficient evidence of citizenship.

Next, Plaintiffs point to a separate group of 463 individuals who have an active professional license registered with the Florida Department of Business and Professional Regulation. (Doc. 108, p. 10). However, an active professional license is not necessarily strong evidence of business ownership, as an individual could be professionally licensed in a foreign state without owning a business. *See Lambert L. Firm P.C. v. Hansel*, No. 24-CV-02396, 2024 WL 4987026, at *4 (D.D.C. Dec. 5, 2024) (differentiating licensure from domicile). Nor is professional licensure necessarily strong evidence of employment in a given state. While business ownership and employment are strong indicators of citizenship—one who owns a business or is employed in a state is more likely than not to reside in that state—

6

individuals can, and often do, hold professional licenses in many states. Accordingly, the Court does not consider the 463 individuals with professional licenses in the State of Florida as citizens of Florida.

Finally, Plaintiffs point to 470 class members who are affiliated with an active Florida entity registered with the Florida Department of State's Sunbiz website. (Doc. 108, p. 11). However, the Court is similarly unconvinced that these records are a strong proxy for domicile. Many individuals are affiliated with a corporation, limited liability company, or other legal entity without having ever established citizenship. While certain indicia of citizenship, like voter registration (which requires, at least at some point, the individual to provide a Florida address), business ownership, and employment are inherent to domicile, mere *affiliation* with a corporate entity is not. Accordingly, the Court will not consider the 470 class members affiliated with a Florida corporate entity as evidence in favor of remand.

Thus, the Court concludes that 1,813 natural persons are Florida residents for the purposes of the Motion, exceeding the 1,762 required for discretionary remand.[2]

---

[2] At the Court's direction, the parties specifically briefed whether the general citizenship rules of unincorporated entities also apply to limited liability companies for purposes of the Class Action Fairness Act ("**CAFA**"). (*See* Docs. 86, 95, 96, 102). Ultimately, the Court has concluded that an analysis of the legal entities within the class is unnecessary to resolve the Motion. Moreover, this issue has yet to be decided by the Eleventh Circuit. (Doc. 104). The Court refrains from weighing in on issues unnecessary to the disposition of the Motion. *PDK Lab'ys Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., Concurring) ("[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further.").

### B.      Discretionary Remand Factors

28 U.S.C. § 1332(d)(3) provides courts with several factors to consider when weighing a discretionary remand. "The plaintiff need not satisfy all factors, rather a balancing test should be applied taking into consideration the totality of the circumstances." *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 359 (E.D.N.Y. 2008) (quotations omitted). The Court addresses each factor in turn.[3]

#### 1.      *Do the claims involve matters of national or interstate interest?*

The two claims in this case are exclusively rooted in Florida. Plaintiffs seek injunctive relief to prevent the collection of fees, enforced by lien and foreclosure proceedings in Florida, in a Florida residential community. (Doc. 66, ¶¶ 36–41). The scope of the sought after injunctive relief is exclusively cabined within Florida. (*Id.*). Plaintiffs' claims for damages are brought against a Florida home-building company that operates a community in Florida. (*Id.* ¶¶ 12, 41–46). The case will likely raise questions arising under the Florida Homeowners' Association Act.

In other words, the causes of action all arise under Florida law, Florida property law is central to the disposition of the case, the Defendant is a Florida company, and the case exclusively involves Florida real estate. Thus, this case does not implicate national or interstate issues, which weighs in favor of remand.

---

[3]   Importantly, Defendants chose not to brief this issue. (*See* Doc. 118, p. 20 ("Because Plaintiffs have not met the mathematical thresholds for the home state and discretionary exceptions to apply, there is no need to consider the other factors listed in 28 U.S.C. §§ 1332(d)(3) or (4).")). Accordingly, the Court need not address any of Defendants' arguments, as there are none to address.

> 2.    *Are the claims governed under Florida law?*

The two claims at issue will be governed exclusively by Florida law; thus, this factor weighs in favor of remand.

> 3.    *Was the action pled to avoid federal jurisdiction?*

Because the class includes all current and former homeowners in the community subject to the alleged unlawful membership fees, the class has been constructed in a logical manner. *See Speed v. JMA Energy Co., LLC*, 872 F.3d 1122, 1133 (10th Cir. 2017) (explaining that an action is pled to avoid federal jurisdiction when the plaintiff "deliberately defined the prospective class or the relief sought in order to frustrate removal under CAFA."). The relief requested, seeking to collect previously paid fees and prevent the payment of future fees, intuitively accords with the class. Accordingly, Plaintiffs have "proposed a natural class that encompasses all of the people and claims that one would expect to include in [this] class action." *Id.*  (cleaned up). Thus, the third factor weighs in favor of remand.

> 4.    *Was the action brought in a forum with a nexus to the class members, the harm, or the Defendants?*

The master declaration included a forum selection clause, mandating that Plaintiffs bring their action in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida. (Doc. 66-1, p. 97). This is where Plaintiffs originally brought this action. Moreover, Osceola County is where the community at issue is and where Defendant has sought to enforce its agreement with Plaintiffs. (Doc.

108, p. 17). With the forum selection clause and location of the community at issue pointing to Osceola County, the fourth factor favors remand.

> 5.   *Does the number of citizens of the forum state outnumber the citizens from any other state?*

Plaintiffs assert that no other state is individually represented by more than 225 class members. (Doc. 108, p. 18). This assertion appears to be uncontested by Defendant. Seeing that the Court has found at least 1,813 individuals to be Florida residents, and there are no states with more than 225 class members, the fifth factor weighs in favor of remand.

> 6.   *Will a federal forum assist in the consolidation of related cases filed within the previous three years?*

Importantly, if "other class actions involving the same subject matter had been filed elsewhere, this would strongly favor federal jurisdiction, because the combined litigation could be handled under the federal court's multidistrict-litigation process." *Speed*, 872 F.3d at 1137. Plaintiffs disclose that this case was preceded by a related action in the Ninth Judicial Circuit, *Country Club at ChampionsGate Master Community Association, Inc. v. Len-CG South, LLC, et al.*, No 2024-CA-001766 (Fla. 9th Cir. Ct.). However, that case was filed in the same court in which this action originated. Thus, there is no need for a federal forum to coordinate related class actions. Accordingly, the sixth factor favors remand.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    Considering that greater than a third of the class members are citizens of Florida, and the discretionary remand factors universally weigh in favor of remand, Plaintiffs' Motion to Remand (Doc. 108) is **GRANTED**.

2.    This case is **REMANDED** to the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, for further proceedings.

3.    The Clerk of Court is **DIRECTED** to send a certified copy of this Order to the Clerk of Court for the Ninth Judicial Circuit, in and for Osceola County, Florida, and to thereafter close the file.

**DONE AND ORDERED** in Orlando, Florida on March 5, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

11